Virginia G. Rosa, MD Bar No. 0610100005
(seeking admission *pro hac vice*)
(202) 326-3068 / vrosa@ftc.gov
P. Connell McNulty, PA Bar No. 87966
(seeking admission *pro hac vice*)
(202) 326-2061 / pmcnulty@ftc.gov
Roberto Anguizola, IL Bar No. 6270874
(seeking admission *pro hac vice*)
(202) 326-3284 / ranguizola@ftc.gov
Federal Trade Commission
600 Pennsylvania Ave., NW, CC-8528
Washington, DC 20580

Local Counsel
Miles D. Freeman, CA Bar No. 299302
(310) 824-4332 / mfreeman@ftc.gov
Federal Trade Commission
10990 Wilshire Blvd., Suite 400
Los Angeles, CA 90024
(310) 824-4380 (fax)

Attorneys for Plaintiff
Federal Trade Commission

**F I L E D**
CLERK, U.S. DISTRICT COURT
NOV 30, 2020
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ rrp _____ DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>MODA LATINA BZ INC., a California corporation, | **FILED UNDER SEAL**<br><br>Case No.: **2:20-cv-10832** FMO (SKx)<br><br>**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF** |

1
2   ESTHER VIRGINIA FERNANDEZ )
3   AGUIRRE, individually and as an )
    officer of Moda Latina BZ Inc., and )
4                                       )
5   MARCO CESAR ZARATE QUÍROZ, )
    individually and as an officer of Moda )
6   Latina BZ Inc., )
                                        )
7                    Defendants. )
8   _____
9
10      Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:
11                      **SUMMARY OF THE CASE**
12      1.    Defendants operate an ongoing deceptive scheme targeting Latina
13   consumers in the midst of the COVID-19 health and economic crisis. Seizing on
14   economic insecurity in the community, Defendants lure consumers into purchasing
15   work-at-home business opportunities with the false promise that consumers will
16   earn hundreds of dollars per week re-selling brand-name perfumes, makeup,
17   jewelry, designer clothing, fashion accessories, and other luxury products. Despite
18   claims of "grandes ganancias" ("large profits")[1] made in Defendants' television
19   advertising and telemarketing pitches, consumers who purchase Defendants' work-
20   at-home business opportunities and related goods lose hundreds of dollars and
21   often get stuck with unsellable merchandise.
22      2.    In perpetrating their scheme, Defendants have taken millions of
23
24   [1] In accordance with L.R. 11-3.10, this document is presented for filing in English.
25   However, Defendants interacted with consumers almost exclusively in Spanish.
     For this reason, Defendants' advertising and certain representations Defendants
26   made to consumers are quoted in their original Spanish language. Translations are
     included in parentheticals following the use of Spanish language phrases. A
27   Certificate of Translation certifying that the translations are true and accurate is
28   attached.

-2-

dollars from consumers while violating the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 41 *et seq.*, and the FTC's Telemarketing Sales Rules ("TSR"), 16 C.F.R. Part 310, by, among other things: (1) making false or unsubstantiated earnings claims regarding Defendants' work-at-home opportunities; (2) misrepresenting material aspects of Defendants' work-at-home opportunities and related goods; and (3) making abusive telephone calls to threaten and intimidate consumers to pay Defendants.

3.     The FTC brings this action under Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the TSR, 16 C.F.R. Part 310, in connection with the sale and marketing of work-at-home opportunities and related goods.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345.

5.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2), (b)(3), (c)(2), and (d), and 15 U.S.C. § 53(b).

## PLAINTIFF

6.     The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC also enforces the Telemarketing Act, 15 U.S.C. §§ 6101-6108. In accordance with the Telemarketing Act, the FTC promulgated and enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive and abusive

telemarketing acts or practices.

7.     The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and the TSR and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b), 57b, and 6105(b).

## **DEFENDANTS**

8.     Defendant Moda Latina BZ Inc. ("Moda Latina BZ"), also doing business as Moda Latina, Club Moda Latina, Perfume Box, El Club Internacional del Perfume, and Club Oro, is a California corporation with its principal place of business at 151 S. 9th Avenue, Suite M, La Puente, California 91746. Moda Latina BZ transacts or has transacted business in this district and throughout the United States. At all times material to this Complaint, acting alone or in concert with others, Moda Latina BZ has advertised, marketed, distributed, or sold work-at-home opportunities and related goods and services to consumers throughout the United States.

9.     Defendant Esther Virginia Fernandez Aguirre, also known as Esther Fernandez ("Fernandez"), is the sole Director, Chief Executive Officer, Secretary, and Chief Financial Officer of Moda Latina BZ. Fernandez resides in California. At all times material to this Complaint, acting alone or in concert with others, she has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Fernandez, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

10.     Defendant Marco Cesar Zarate Quíroz, also known as Marco Zarate ("Zarate"), is the General Manager of Moda Latina BZ. Zarate resides in California. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or

participated in the acts and practices set forth in this Complaint. Zarate, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

## COMMERCE

11. At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES

12. Since at least 2017, Defendants have advertised, marketed, distributed, promoted, and sold work-at-home opportunities to consumers throughout the United States.

13. Defendants market and sell work-at-home opportunities under multiple brand names including: Moda Latina, Club Moda Latina, Perfume Box, El Club Internacional del Perfume, and Club Oro (collectively "Moda Latina").

14. While Defendants use multiple brand names in their advertising, they consistently use the name "Moda Latina" to receive payment for their work-at-home opportunities.

15. From March 2017 to August 2020, Defendants took more than $7 million from consumers who purchased Moda Latina work-at-home opportunities.

16. Defendants advertise Moda Latina through a variety of media including television, videos disseminated online through YouTube, and social media such as Facebook.

17. Defendants widely disseminate their advertising for Moda Latina throughout the United States.

18. Defendants also induce the purchase of Moda Latina through telemarketing.

19. Defendants' marketing campaigns target Latina consumers interested in starting work-at-home businesses.

20.     Defendants' advertising and marketing campaigns are conducted primarily in Spanish.

21.     Defendants make earnings claims in connection with the offer for sale, sale, and promotion of Moda Latina.

22.     In their advertising and marketing, Defendants represent that consumers who purchase Moda Latina are likely to profit by buying and re-selling jewelry, designer clothing, fashion accessories, makeup, brand-name perfumes and other luxury products.

23.     Typical representations made in Defendants' advertising include the following:

        A.     "¿Quieres tener tu propio negocio y ganar hasta mil dólares semanales?" ("Want to have your own business and earn up to a thousand dollars per week?")

        B.     "Gana hasta $500.00 por semana" ("Earn up to $500.00 per week")

        C.     "Llama ya!!! y ordena tu Membresía Y EMPIEZA A GANAR MUCHO DINERO!!!" ("Call now!!! and order your membership AND BEGIN TO MAKE A LOT OF MONEY!!!").

        D.     "¿Quieres tener tu propio negocio y ganar mucho dinero?" ("Want to have your own business and earn a lot of money?")

        E.     "Usted también gane mucho Dinero." ("You too can earn a lot of money.")

24.     Defendants' earnings claims regarding Moda Latina are false or unsubstantiated.

25.     Few, if any, consumers who purchase Moda Latina earn the income Defendants advertise. Most, if not all, purchasers do not earn any income whatsoever with Moda Latina.

1

**Defendants' Deceptive Television Commercials**

2      26.     Defendants typically place their advertising on Spanish language

3   television networks such as Univision and Telemundo during TV shows that are

4   popular among Latina consumers.

5      27.     Defendants' television advertisements leave consumers with the

6   impression that they will profit substantially by purchasing the Moda Latina work-

7   at-home business opportunity and selling the purportedly authentic and high-

8   quality products Defendants offer members at what they claim are heavily

9   discounted wholesale prices.

10     28.     Defendants' television advertising routinely features earnings claims.

11     29.     For example, on April 27, 2020, Moda Latina BZ ran an ad using the

12   fictitious business name "El Club Internacional del Perfume" on "Univision

13   tlnovelas," a Spanish language cable television network dedicated to broadcasting

14   telenovelas.

15     30.     In this ad, Moda Latina BZ offers an opportunity to make money

16   working from home by selling authentic and famous brand-name perfumes.

17     31.     The ad promises "grandes ganancias" ("large profits") and includes

18   the following representation: "Gana hasta $500.00 por semana" ("Earn up to

19   $500.00 per week").

20     32.     The ad also features a purported member counting wads of money

21   with large boxes of brand name perfumes in the background. At the top of the

22   screen appear the words "Usted tambien gane mucho Dinero" ("You too will earn

23   a lot of Money").  A screenshot of the El Club Internacional del Perfume television

24   ad appears below as **Fig. 1**:

25

26

27

28



**Fig. 1.**

33.     The ad urges viewers to "Llama ya!!! y ordena tu Membresía Y EMPIEZA A GANAR MUCHO DINERO!!!" ("Call now!!! and order your membership AND BEGIN TO MAKE A LOT OF MONEY!!!).

34.     Near the end of the ad, Moda Latina BZ offers a free tablet computer to viewers that call "hoy" ("today") and enroll.

35.     This ad, or substantially similar versions of the El Club Internacional del Perfume television commercial, aired nationwide as recently as October 2, 2020 on Univision.

36.     Also in 2020, Moda Latina BZ ran an ad using the fictitious business name "Perfume Box" on Spanish language television networks, including Univision.

37.     In the Perfume Box ad, Moda Latina BZ offers an opportunity to make money working from home selling authentic and famous brand-name perfumes.

38.     The ad promises purchasers "grandes ganancias" ("large profits").

39.     During the Perfume Box ad, a male voice-over makes the following representations in Spanish:

        A.      "¿Quieres tener tu propio negocio y ganar hasta mil dólares

semanales?" ("Do you want to have your own business and earn up to one thousand dollars a week?")

    B.    "Aquí está la oportunidad de Perfume Box… Es la primera caja comercial de perfumes en los Estados Unidos, que está dejando grandes ganancias a quien la ordena.  Gana dinero sin jefes ni horarios y sin descuidar a tu familia." ("Here is the opportunity from Perfume Box… It's the first business perfume box in the United States, that is leaving great profits for those who order it.  Earn money without bosses or schedules, and without neglecting your family.")

40.    The ad features two purported Perfume Box purchasers.

41.    The first purported Perfume Box purchaser featured in the ad (an unidentified woman with dark hair) can be seen counting wads of money at a desk while surrounded by large boxes of brand name perfumes. At the bottom of the screen appear the words "¿Quieres tener tu propio negocio y ganar mucho dinero?" ("Do you want to have your own business and earn a lot of money?"). A screenshot of this part of the Perfume Box television ad appears below as **Fig. 2**:



**Fig. 2**

42.     A second purported Perfume Box purchaser featured in the ad (an unidentified woman with blond hair) can also be seen later in the ad surrounded by boxes of brand name perfumes while seated on a couch. A screenshot of this portion of the Perfume Box television ad appears below as **Fig. 3**:



**Fig. 3**

43.     During this portion of the ad, the second purported Perfume Box purchaser says, "¿Crisis? ¿Cuál crisis?  Yo me olvidé de ella desde que empecé a vender con Perfume Box.  Cambió mi vida y mi economía por completo." ("Crisis? What crisis? I forgot about that ever since I started selling with Perfume Box. It completely changed my life and my finances.")

44.     Later in the ad, the first purported Perfume Box purchaser appears again by herself and says, "[a]l recibir mi primer orden de Perfume Box, quedé sorprendida.  Más de mil dólares de perfumes de las mejores marcas." ("When I received my first order from Perfume Box, I was surprised.  More than a thousand dollars' worth of perfumes from the best brands.")

45.     Immediately thereafter, the second purported Perfume Box purchaser appears by herself and says. "¡Sí! Gucci, Versace, Dior, Carolina Herrera y muchas marcas finas y todas originales." ("Yes!  Gucci, Versace, Dior, Carolina Herrera and lots of luxury brands, and all originals.")

-10-

46.     The ad then shifts back to the first purported Perfume Box purchaser who says, "Además te mandan muchas muestras de perfumes, y claro, así es facilísimo de vender." ("They also send you lots of perfume samples, and of course it's easy to sell like that.")

47.     Near the end of the Perfume Box ad, both purported Perfume Box purchasers appear together and say, "Con Perfume Box sacamos para la renta, los biles, y hasta nos sobra dinero extra." ("With Perfume Box we make money for rent, the bills, and we even have extra money left over.") A screenshot of this portion of the Perfume Box television ad appears below as **Fig. 4**:



**Fig. 4.**

48.     Throughout the Perfume Box ad, viewers are urged on screen and in a voiceover to "¡¡¡Llámanos ya!!!" ("Call now!!!") and "¡Llama hoy Mismo!" ("Call today!"). A screenshot of a portion of the Perfume Box television ad urging consumers to call appears below as **Fig. 5**:

**Fig. 5.**

49.     At the end of the ad, Moda Latina BZ offers the first 25 callers the choice of an Apple iPad or an Apple iPhone as a free gift.

50.     This ad, or substantially similar versions of the Perfume Box television commercial, aired as recently as November 20, 2020 on TeleXitos, a Spanish language television network, in the San Diego, CA viewing area.

**Defendants' Deceptive and Abusive Telemarketing**

51.     When consumers respond to Defendants' advertising by telephone, Defendants' telemarketers repeat and reinforce many of the earnings claims and other misrepresentations that Defendants make on television.

52.     During these calls, Defendants' telemarketers tell consumers that enrolling in Moda Latina is a great opportunity to make money by buying merchandise at reduced wholesale prices from Defendants and then re-selling it at a significant profit in their communities.

53.     Defendants' telemarketers also tell consumers that to get started they will have to pay to enroll and receive an initial Moda Latina kit ("Moda Latina Kit").

54.     Defendants' telemarketers tell consumers that the Moda Latina Kits will include authentic products such as gold jewelry, brand-name perfumes, makeup and other beauty and luxury fashion products.

55.     Defendants typically charge between $199 and $299 for enrollment in Moda Latina.

56.     Defendants' telemarketers routinely tell consumers they will easily be able to recoup their investment by re-selling the products contained in the Moda Latina Kit at a profit.

57.     In many instances, Defendants' telemarketers make express earnings claims.

58.     For example, in a February 2020 telephone call, one of Defendants' telemarketers, who identified himself as "Javier," told a consumer that she could "make twice" the money she invested in a Moda Latina Kit.

59.     During another telephone call on April 27, 2020, one of Defendants' telemarketers, who identified herself as "Leticia Hernandez," made the following representations to an FTC investigator who was posing as a consumer:

A.     "[L]a compañía …le ofrece la oportunidad de que usted se inicie su negocio poco a poco, sin presión, con descuentos y ganancias pues muy buenas, de un cincuenta a un ochenta por ciento, verdad." ("[T]he company… is giving you the opportunity for you to start your own business little by little - no pressure - with very good discounts and profits between fifty to eighty percent, right.")

B.     "[N]osotros vendemos perfumes totalmente originales, no vendemos réplicas, no vendemos imitaciones. Manejamos, señora, más de 1,500 fragancias. Tenemos de todas las marcas, desde las más reconocidas, como lo son Chanel, Prada, Christian Dior, Paco Rabanne, Givenchy y muchos más,

verdad." ("[W]e sell totally original perfumes, we do not sell replicas; we do not sell imitations. Ma'am, we handle over 1,500 fragrances. We have all the brands, from the most recognized, such as Chanel, Prada, Christian Dior, Paco Rabanne, Givenchy and many more, right.")

C.   "No importa que no tenga experiencia [undercover identity], simplemente con que usted tenga ganas de hacer algún negocio que le dé a ganar dinero, pues eso es lo importante, verdad." ("[I]t does not matter that you have no experience. Simply the fact that you want to do a little business that will earn you money; that is the important thing, right.")

D.   "Este paquete, señora [undercover identity], cuenta con los cupones que a usted de entrada le va a dar una ganancia mínima de $700. Este paquete puede ser para usted. Lo único que usted tiene que hacer [undercover identity], pues es inscribirse, activar la membresía, verdad." ("This package, [undercover identity], comes with the coupons that will give you a minimum profit of $700.  This package can be for you.  [Undercover identity], the only thing you need to do is sign up, activate your membership, right.")

E.   "El costo de inscripción de membresía, señora sería por la cantidad mínima a pagar de $299 de inscripción. $299 que se lo garantizo [undercover identity] que en menos de una semana de haber recibido este paquete, lo recuperá y hasta le queda dinero de ganancia, verdad." ("The cost of membership registration, madam, would be the minimum amount to be paid of $299 for the registration fee.  $299 which - I guarantee to you, [undercover identity] - in less than a week of receiving this

package, you will recoup that and will even have money left over as profit, right.")

60.     Once consumers agree to enroll in Moda Latina, Defendants' telemarketers offer to ship the Moda Latina Kit using FedEx's Collect on Delivery (COD) service. This service allows Moda Latina BZ to receive payments from consumers via money orders that FedEx drivers collect when Moda Latina Kits are delivered. FedEx then sends the payments to Moda Latina BZ.

61.     While in some instances Defendants' telemarketers agree to take payment by credit card prior to shipment, most purchasers pay by money order upon COD delivery of the Moda Latina Kit.

62.     From July 17, 2018 to August 21, 2020, Moda Latina BZ took in more than $2.6 million from consumers who made payment upon COD delivery.

63.     Defendants' telemarketers tell the consumers who agree to COD delivery that the Moda Latina Kit will be shipped by FedEx. Defendants' telemarketers instruct these consumers to give the FedEx driver a money order payable to "Moda Latina" when the Moda Latina Kit is delivered.

64.     Soon after consumers agree to COD delivery of the Moda Latina Kit, Defendants bombard them with abusive telephone calls and messages that involve harassment, threats and intimidation.

65.     Defendants' abusive telephone calls and messages are designed to ensure consumers accept the Moda Latina Kit and pay with a money order upon delivery, as they had agreed to do.

66.     During these calls, Defendants' telemarketers routinely threaten to report consumers to credit reporting agencies and/or the federal government, and often threaten consumers with lawsuits.

67.     For example, in April 2020, one of Defendants' telemarketers called a consumer in Chesapeake, Virginia three times within 24 hours of her enrollment in Moda Latina.  According to the consumer, each of the calls was delivered in a very

aggressive tone and included threats to report her to the "credit bureau" if she was not ready with a money order for $299 when her Moda Latina Kit arrived by FedEx COD delivery.

68.     The consumer enrolled and ordered a Moda Latina Kit on Monday, April 27, 2020. Later that day, one of Defendants' telemarketers, who identified herself as "Yesenia," called the consumer and told her that the call was being recorded, that Moda Latina was sending a package, and that she would have to be home to receive and pay for the package with a money order for $299. Defendants' telemarketer also threatened to report the consumer to the "credit bureau" if she wasn't home to make the COD payment when the Moda Latina Kit arrived.

69.     That night, at approximately 8 p.m. EST, Defendants' telemarketer called the consumer a second time and repeated her message from earlier in the day. She again told the consumer that the call was being recorded and stressed the importance of being home and ready with a money order for $299 on Wednesday, when the Moda Latina Kit was due to arrive. Defendants' telemarketer also repeated her threat to report the consumer to the "credit bureau" if she did not pay for the package upon delivery.

70.     At approximately 1 p.m. EST on Tuesday, April 28, 2020, Defendants' telemarketer called the consumer a third time. Once again, Defendants' telemarketer indicated that they were on a recorded line, that the Moda Latina Kit was arriving on Wednesday, and that the consumer needed to be home and ready with a money order for $299 to pay for the package upon delivery. Defendants' telemarketer also repeated the threat that the consumer would be reported to a credit bureau if she did not pay for the package when it arrived.

71.     On August 6, 2020, one of Defendants' telemarketers, who identified herself as "Yesenia," made the following representations in a voicemail she left for an FTC investigator who was posing as a consumer:

A.    "Buenas tardes este mensaje es para [undercover identity]….[H]abla Yesenia del departamento de paquetería y envíos de Federal Express. Realmente [undercover identity], la gente me sorprende. La gente cuando llama y ordena muestra una responsabilidad y un compromiso. No pienses que por el hecho de no estar contestando el teléfono estás solucionando algo. Hoy pasó FedEx por tu dirección a las 12:47. No estuviste con el money order listo para recibir el paquete. Es bien importante que el día de hoy te presentes en la oficina de FedEx a recoger el paquete con identificación en mano. Recuerde que si el paquete no se recibe. Si el paquete se regresa, automáticamente la compañía va a empezar a proceder y en corte sí los obligan a pagar todos los gastos ocasionados. Y es bajo tu responsabilidad si quieres evitar de problemas a los propietarios de la residencia. El paquete se tiene que recoger hoy mismo por lo que le dijiste al chofer. Gracias y que pases muy buen día."

("Good afternoon, this message is for [undercover identity]. This is Yesenia of the Federal Express parcel and shipping department. Really [undercover identity], people surprise me. When people call and order, they take on a responsibility and commitment. Don't think that by not answering the telephone you are solving anything. Today FedEx arrived at your address at 12:47. You were not there with the money order ready to receive the package. It is very important that you show up at the FedEx office today to pick up the package with your identification in hand. Remember, if the package is not

-17-

received. If the package is returned, the company will automatically begin proceedings and in court they will require you to pay all of the costs incurred. And it is your responsibility if you want to avoid problems for the owners of your residence. The package has to be picked up today based on what you told the driver. Thank you and have a good day.")

72.     Defendants rarely, if ever, follow through on their threats to sue consumers in court or to report them to credit reporting agencies or the federal government.

**Defendants Fail to Deliver on their Claims and Promises**

73.     Defendants fail to deliver on their claims and promises.

74.     Contrary to Defendants' representations, consumers who purchase Moda Latina and attempt to re-sell the merchandise they receive from Defendants are unlikely to earn the income that Defendants advertise.

75.     Most consumers who purchase Moda Latina do not make a profit.

76.     In truth and in fact, the products that Defendants deliver to Moda Latina purchasers are not marketable at a profit.

77.     In many instances, the "wholesale" prices for perfumes that Defendants offer consumers who purchase Moda Latina exceed the retail pricing for perfumes offered by major retailers such as Amazon, FragranceX and Macy's.

78.     In some instances, consumers report receiving knock-offs or unauthorized goods from Defendants. Such products are not salable in legitimate commerce.

79.     Defendants have no adequate basis for making earnings claims in connection with the marketing, selling, and advertising of Moda Latina.

80.     Based on Moda Latina BZ's shipping records from February 2017 to May 12, 2020, 89% of consumers who placed an initial order for the Moda Latina Kit did not place a second order.

81.     Based on the facts and violations of law alleged in this Complaint, the FTC has reason to believe that Defendants are violating or are about to violate laws enforced by the Commission.

## VIOLATIONS OF THE FTC ACT

82.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

83.     Misrepresentations of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

### Count I — False or Unsubstantiated Earnings Claims

84.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of work-at-home opportunities, Defendants represent, directly or indirectly, expressly or by implication, that consumers who purchase Defendants' work-at-home opportunities are likely to earn substantial income, such as hundreds of dollars per week.

85.     The representations set forth in Paragraph 84 are false or misleading or were not substantiated at the time the representations were made.

86.     Therefore, Defendants' representations as set forth in Paragraph 84 constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE TELEMARKETING SALES RULE (TSR)

87.     Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101-6108, in 1994. The FTC adopted the original Telemarketing Sales Rule ("TSR") in 1995, extensively amended it in 2003, and amended certain provisions thereafter.  16 C.F.R. Part 310.

88.     Defendants are "sellers" and "telemarketers" engaged in "telemarketing" as defined by the TSR, 16 C.F.R. § 310.2(dd), (ff), and (gg).

89.     Defendants' goods and services, including Defendants' work-at-home opportunities, are "Investment opportunit[ies]" as defined in the TSR, 16 C.F.R. § 310.2(s). The TSR defines an "Investment opportunity" as "anything, tangible or intangible, that is offered, offered for sale, sold, or traded based wholly or in part on representations, either express or implied, about past, present, or future income, profit, or appreciation." 16 C.F.R. § 310.2(s).

90.     The TSR prohibits sellers and telemarketers from "[m]isrepresenting, directly or by implication, in the sale of goods or services…[a]ny material aspect of an investment opportunity including, but not limited to, risk, liquidity, earnings potential, or profitability." 16 C.F.R. § 310.3(a)(2)(vi).

91.     The TSR prohibits sellers and telemarketers from "[m]isrepresenting, directly or by implication, in the sale of goods or services…[a]ny material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer." 16 C.F.R. § 310.3(a)(2)(iii).

92.     The TSR prohibits sellers and telemarketers from "[m]aking a false or misleading statement to induce any person to pay for goods or services…." 16 C.F.R. § 310.3(a)(4).

93.     The TSR prohibits sellers and telemarketers from engaging in "[t]hreats, intimidation, or the use of profane or obscene language…." 16 C.F.R. § 310.4(a)(1).

94.     The TSR applies to "[c]alls initiated by a customer or donor in response to an advertisement relating to investment opportunities, debt relief services, business opportunities other than business arrangements covered by the Franchise Rule or Business Opportunity Rule, or advertisements involving offers for goods or services described in §310.3(a)(1)(vi) or §310.4(a)(2) through (4)…" 16 C.F.R. § 310.6(b)(5)(i).

95.     Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of

the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### Count II — Misrepresentations of Material Aspects of Investment Opportunities

96.    In numerous instances, in connection with telemarketing, Defendants have misrepresented, directly or by implication, material aspects of investment opportunities, including, but not limited to, the risk, liquidity, earnings potential, or profitability of Defendants' work-at-home opportunities.

97.    Defendants' acts and practices, as described in Paragraph 96, violate the TSR prohibition on misrepresenting any material aspect of an investment opportunity, 16 C.F.R. § 310.3(a)(2)(vi).

98.    Defendants' acts and practices, as described in Paragraph 96, also violate the TSR prohibition on misrepresenting any material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer, 16 C.F.R. § 310.3(a)(2)(iii).

99.    Defendants' acts and practices, as described in Paragraph 96, also violate the TSR prohibition on making a false or misleading statement to induce any person to pay for goods or services, 16 C.F.R. § 310.3(a)(4).

### Count III — Abusive Telemarketing Threats and Intimidation

100.    In numerous instances, in connection with telemarketing, Defendants have used threats or intimidation to coerce consumers to pay Defendants, including but not limited to threatening consumers with damage to consumers' credit history, false legal actions, and reports to federal government authorities.

101.    Defendants' acts and practices, as alleged in Paragraph 100, violate the TSR, 16 C.F.R. § 310.4(a)(1).

### CONSUMER INJURY

102.    Consumers are suffering, have suffered, and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act and the TSR.

1  In addition, Defendants have been unjustly enriched as a result of their unlawful
2  acts or practices.  Absent injunctive relief by this Court, Defendants are likely to
3  continue to injure consumers, reap unjust enrichment, and harm the public interest.

**THE COURT'S POWER TO GRANT RELIEF**

4
5      103.   Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court
6  to grant injunctive and such other relief as the Court may deem appropriate to halt
7  and redress violations of any provision of law enforced by the FTC.  The Court, in
8  the exercise of its equitable jurisdiction, may award ancillary relief, including
9  rescission or reformation of contracts, restitution, the refund of monies paid, and
10  the disgorgement of ill-gotten monies, to prevent and remedy any violation of any
11  provision of law enforced by the FTC.

12      104.   Section 19 of the FTC Act, 15 U.S.C. §57b, and Section 6(b) of the
13  Telemarketing Act, 15 U.S.C. § 6105(b), authorize this Court to grant such relief
14  as the Court finds necessary to redress injury to consumers resulting from
15  Defendants' violations of the TSR, including the rescission or reformation of
16  contracts and the refund of money.

**PRAYER FOR RELIEF**

17
18      Wherefore, Plaintiff FTC, pursuant to Sections 13(b) and 19 of the FTC Act,
19  15 U.S.C. §§ 53(b) and 57b, and Section 6(b) of the Telemarketing Act, 15 U.S.C.
20  § 6105(b), and the Court's own equitable powers, requests that the Court:

21      A.      Award Plaintiff such preliminary injunctive and ancillary relief as may
22  be necessary to avert the likelihood of consumer injury during the pendency of this
23  action and to preserve the possibility of effective final relief, including temporary
24  and preliminary injunctions, an order freezing assets, immediate access, and
25  appointment of a receiver;

26      B.      Enter a permanent injunction to prevent future violations of the FTC
27  Act and the TSR by Defendants;

28      C.      Award such relief as the Court finds necessary to redress injury to

consumers resulting from Defendants' violations of the FTC Act and the TSR, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

      D.     Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Respectfully submitted,

ALDEN F. ABBOTT
General Counsel

Dated:  November 30, 2020

*Roberto Anguizola*

Virginia G. Rosa
(seeking admission *pro hac vice*)
P. Connell McNulty
(seeking admission *pro hac vice*)
Roberto Anguizola
(seeking admission *pro hac vice*)
Federal Trade Commission
600 Pennsylvania Ave., NW
Mailstop CC-8528
Washington, DC 20580
(202) 326-3068 / vrosa@ftc.gov
(202) 326-2061 / pmcnulty@ftc.gov
(202) 326-3284 /ranguizola@ftc.gov

and

Local Counsel
Miles D. Freeman, CA Bar No. 299302
Federal Trade Commission
10990 Wilshire Boulevard, Suite 400
Los Angeles, California 90024
(310) 824-4332 / mfreeman@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION



# Certification of Translation Accuracy

**Date**:                                                  07 Oct 2020
**Certification Number**:                    CTA39535-1
**ISO 9001:2015 Certification Number**:     14820/C/0001/UK/En

**Prisma Project Number**:                 40353
**Client**:                                        Federal Trade Commission
**FTC Project Name**:                        2020-10-06 Proposed Moda Latina Complaint

**Source language(s)**:                       Spanish

**Target language certified herein**:        English [US]

**Documents certified herein**:              *File name*:

                                              Complaint for Permanent Injunction and Other Equitable Relief

**To whom it may concern:**

Prisma International is a provider of professional translation services, and is a GSA Contract Holder for Translation Services under Schedule 382.1 (GSA Contract Number GS-10F-0088Y).

This letter certifies that the translation of the above-referenced documents has been carried out according to our ISO-certified translation process, and as such, represents a true and accurate rendering of the source documents.

The above-referenced documents were translated from Spanish to English by a translator whose professional qualifications include the following:

**Native language**:                         English
**Translation language(s)**:                 Spanish
**Professional Certification(s)**:           **ATA-certified**

## EDUCATION

**2003 – 2005**  New York University (New York, NY). Coursework in general, legal and financial translation.

**August 2000**  M.A., Romance Languages.
University of Pennsylvania, Philadelphia, Pennsylvania.

**May 1999**  B.A., French, *summa cum laude*, Phi Beta Kappa.
Hamilton College, Clinton, New York.

## EXPERIENCE

**Legal/Contracts:**
- Human Resources documents
- Prenuptial agreements, divorce judgments, birth certificates, adoption judgments, attestations
- Business contracts

**NGOs:**
- Proposals and evaluation reports for international humanitarian aid projects
- Press releases, fundraising appeals

**Humanities:**
- Scholarly articles in the fields of sociology, psychology, and history
- Journal articles on music history

**Education:**
- University and Baccalauréat transcripts and diplomas
- Psychoeducational evaluations
- Course descriptions/syllabi

## CURRENT, ACTIVE MEMBERSHIPS
- American Translators Association: Certified Translator, since 2007
- Midwest Association of Translators and Interpreters
- Translators Without Borders: Volunteer Translator, French>English, Spanish>English
- American Council on the Teaching of Foreign Languages

The referenced documents are a true and accurate English translation of the original Spanish documents, to the best of my knowledge. Any questions may be directed to our office by phone (612) 338-1500 or email certifications@prisma.com.


**James V. Romano, Ph.D.**
Chief Executive Officer
Prisma International, Inc.
**jromano@prisma.com**

**Notary**:
Brian E. Jacobs, Esq.
N.J. Attorney at Law
Notary 025871996
07 Oct 2020

Notary:
Brian E. Jacobs, Esq.
N.J. Attorney at Law
Notary 025871996